UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHIGAN DEPARTMENT OF
ENVIRONMENTAL QUALITY,

        Plaintiff,

Civil Case Number 17-12107
Honorable David M. Lawson

v.

CITY OF FLINT,

        Defendant,

and

FLINT CITY COUNCIL,

        Intervening defendant.

_____/

**OPINION AND ORDER DENYING INTERVENING DEFENDANT'S EMERGENCY MOTION FOR RECONSIDERATION, TO ALTER OR AMEND JUDGMENT, FOR RELIEF FROM JUDGMENT, AND FOR STAY OF PROCEEDINGS**

The Court entered judgment in this case on October 17, 2017 directing defendant City of Flint to execute a long-term contract providing for a source of water for its water distribution by October 23, 2017. The contract must comply with an Emergency Administrative Order that had been issued several months earlier by the Environmental Protection Agency (EPA). The delay in finalizing such an agreement imperiled the solvency of Flint's water system and its future capacity to deliver safe drinking water to Flint's residents. The City of Flint has now concurred in the judgment's order for relief. Its City Council — an intervening defendant — has filed a motion for relief from that judgment, or to amend the judgment, or to stay the proceedings, because, it says (among other things), it wants more time to gather information and mull this over. Plaintiff Michigan Department of Environmental Quality (MDEQ) argues that much of the information that

the City Council presents to support its new arguments comes too late in this litigation, and the urgent need for a long-term contract still exists. With one exception, the Court agrees. And that exception consists of a subject matter jurisdiction argument that is unpersuasive. Therefore, the Court will deny the City Council's motion.

MDEQ discussed in its response to the motion various options for enforcing the judgment. But the Court does not act on its own in that realm. If the judgment remains unsatisfied, the plaintiff must take the initiative to file an appropriate motion for enforcement.

I.

The City Council presents six arguments: (1) there is no subject matter jurisdiction because MDEQ did not satisfy the 60-day notice provision of the Safe Drinking Water Act's citizen suit section; (2) Flint's rate of collecting water bills could improve to the point that insolvency of the water fund is not inevitable; (3) there are factual disputes that should have precluded summary judgment; (4) the Court was required to hold an evidentiary hearing before issuing a permanent injunction; (5) forcing Flint's legislative body to sign a contract violates certain state laws; and (6) a stay of the judgment is appropriate because Flint is not in danger of losing its source of drinking water. These arguments purportedly are based on Federal Rules of Civil Procedure 59(e), 60(b)(1), 60(b)(6), and 62(b), and Local Rule 7.1(h). Other than citing those rules in the first paragraph of its motion, the City Council does not discuss the requirements of those rules or mention them again in its brief. Appreciating those rules' requirements, however, is necessary to applying them.

A party seeking relief under Rule 59(e) must show one of four things: "(1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice." *Intera Corp. v. Henderson*, 428 F.3d 605, 620 (6th Cir. 2005) (citing

*GenCorp, Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999)). The "newly discovered evidence," though, "'must have been previously unavailable.'" *HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 615 (6th Cir. 2012) (quoting *GenCorp*, 178 F.3d at 834). "[T]he newly discovered evidence also 'must be of such a nature as would probably produce a different result,' and it is well-settled that the requirements for newly discovered evidence are essentially the same under Rule 59(e) and 60(b)(2)." *F.D.I.C. v. Arciero*, 741 F.3d 1111, 1117 (10th Cir. 2013) (quoting *Devon Energy Prod. Co., L.P. v. Mosaic Potash Carlsbad, Inc.*, 693 F.3d 1195, 1213 (10th Cir. 2012); 11 Charles A. Wright, Federal Practice and Procedure § 2859 (2012) ("The same standard applies to motions on the ground of newly discovered evidence whether they are made under Rule 59 or Rule 60(b)(2)."). However, "parties cannot use a motion for reconsideration [under Rule 59(e)] to raise new legal arguments that could have been raised before a judgment was issued." *Roger Miller Music, Inc. v. Sony/ATV Publishing, LLC*, 477 F.3d 383, 395 (6th Cir. 2007) (citing *Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998) (stating that "[a] motion under Rule 59(e) is not an opportunity to re-argue a case").

A motion based on Rule 60(b)(1) is "intended to provide relief to a party in only two instances: (1) when the party has made an excusable litigation mistake or an attorney in the litigation has acted without authority; or (2) when the judge has made a substantive mistake of law or fact in the final judgment or order." *Cacevic v. City of Hazel Park*, 226 F.3d 483, 490 (6th Cir. 2000) (internal quotation marks omitted). As with a Rule 59(e) motion, a party may not use Rule 60(b) "as an occasion to relitigate its case." *General Universal Systems, Inc. v. Lee*, 379 F.3d 131, 157 (5th Cir. 2004).

The Sixth Circuit has held that a court may grant relief under Rule 60(b)(6) "'only in exceptional and extraordinary circumstances,' which are defined as those 'unusual and extreme situations where principles of equity mandate relief.'" *Export-Import Bank of U.S. v. Advanced Polymer Sciences, Inc.*, 604 F.3d 242, 247 (6th Cir. 2010) (quoting *Jinks v. AlliedSignal, Inc.*, 250 F.3d 381, 387 (6th Cir. 2001)). In addition, "something more than one of the grounds in subsections (1) through (5)" must be shown to justify relief under Rule 60(b)(6). *East Brooks Books, Inc. v. City of Memphis*, 633 F.3d 459, 465 (6th Cir. 2011).

Rule 62(b) allows a court to stay the execution of a judgment in the short term if a post-judgment motion is pending under, among others, Rules 59 or 60. But such a stay must be "[o]n appropriate terms for the opposing party's security." Fed. R. Civ. P. 62(b). "What constitutes 'appropriate terms' is a matter left to the trial court's discretion, but normally the party seeking a stay is required to post a bond sufficient to protect fully the prevailing party's interest in the judgment." *Newburgh/Six Mile Ltd. P'ship II v. Adlabs Films USA, Inc.*, No. 09-11067, 2010 WL 3167393 at *1 (E.D. Mich. Aug. 9, 2010) (internal quotation marks and citations omitted). To obtain a longer stay, the moving party must show that four factors, in balance, favor that relief. Those factors are: "(1) the likelihood that the party seeking the stay will prevail on the merits of the appeal; (2) the likelihood that the moving party will be irreparably harmed absent a stay; (3) the prospect that others will be harmed if the court grants the stay; and (4) the public interest in granting the stay." *Service Employees Int'l Union Local 1 v. Husted*, 698 F.3d 341, 343 (6th Cir. 2012) (citing *Michigan Coalition of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991)); *see also Jpmorgan Chase Bank, N.A. v. Winget*, No. 08-13845, 2016 WL 627755, at *1 (E.D. Mich. Feb. 17, 2016). The factors are "interrelated considerations," *ibid.* (quoting

*Griepentrog*, 945 F.2d at 153), meaning that a strong showing of irreparable injury, for example, might make up for a modest showing of likely success. *Griepentrog*, 945 F.2d at 153-54 (observing that "more of one excuses less of the other" (citations omitted)). However, a defendant seeking to stay a district court's judgment "is still required to show, at a minimum, 'serious questions going to the merits.'" *Ibid.*

Finally, under Local Rule 7.1(h), the moving party must show (1) a "palpable defect," (2) that misled the court and the parties, and (3) that correcting the defect will result in a different disposition of the case. E.D. Mich. LR 7.1(h)(3). A "palpable defect" is a defect which is obvious, clear, unmistakable, manifest, or plain. *Mich. Dep't of Treasury v. Michalec*, 181 F. Supp. 2d 731, 734 (E.D. Mich. 2002) (citations omitted). "Generally . . . the court will not grant motions for rehearing or reconsideration that merely present the same issues ruled upon by the court." E.D. Mich. LR 7.1(h)(3).

## II.

There is a common denominator among most of these rules: a party that has had a fair chance to present its arguments ought not have a second bite at the apple. Most of the City Council's present arguments could be dispatched under this rubric. However, the contention that the MDEQ failed to abide by the SDWA's citizen suit 60-day notice requirement requires special attention, because if subject matter jurisdiction is implicated, the issue can be raised at any time, even if a party passed on the opportunity earlier in the case.

### A. 60-day Notice Provision

The SDWA's citizen suit provision contains this caution:

No civil action may be commenced--

> (1) under subsection (a)(1) of this section respecting violation of a requirement prescribed by or under this subchapter--
>> (A) prior to sixty days after the plaintiff has given notice of such violation (i) to the Administrator, (ii) to any alleged violator of such requirement and (iii) to the State in which the violation occurs . . . .

42 U.S.C.A. § 300j-8(b)(1)(A). Citing *Hallstrom v. Tillamook County*, 493 U.S. 20 (1989), the City Council contends that this statute is "jurisdictional," and that the MDEQ did not comply with it. Whether the 60-day notice requirement is a jurisdictional requisite on one hand, or a claim processing rule on the other, is an important consideration. If the former, the issue can be raised at any time. *Schultz v. Gen. R.V. Ctr.*, 512 F.3d 754, 756 (6th Cir. 2008). If the latter, then the question must be raised under Rule 12(b)(6) or Rule 56. A motion under Rule 12(b)(6) "must be made before pleading if a responsive pleading is allowed." Fed. R. Civ. P. 12(b). And a motion under Rule 56 may be filed "at any time until 30 days after the close of all discovery." Fed. R. Civ. P. 56(b). A challenge to the notice requirement after judgment is entered comes too late, unless subject matter jurisdiction is implicated.

In *Hallstrom*, the Supreme Court considered the notice requirement in the citizen suit section of the Resource Conservation and Recovery Act (RCRA), found at 42 U.S.C. § 6972(b)(1), which reads similarly to its counterpart in the SDWA. The defendant timely raised the notice defect in a motion for summary judgment, but the district court found that the purpose of the statute had been satisfied because the state agencies had notice of the claim for 60 days while the lawsuit had been pending and chose to take no action. 493. U.S. at 24. The Court held that the notice and delay requirements "are mandatory conditions precedent to commencing suit" under that statute, which the "district court may not disregard." 493 U.S. at 31. However, the Court did not answer the

question that is important here, as it decided that it "need not determine whether § 6972(b) is jurisdictional in the strict sense of the term." *Ibid.*

In *Board of Trustees of Painesville Twp. v. City of Painesville, Ohio*, 200 F.3d 396 (6th Cir. 1999), the Sixth Circuit discussed the citizen suit notice provision in the Clean Water Act in jurisdictional terms. 200 F.3d at 400 ("This circuit has always required plaintiffs to adhere to § 1365's notice provision because compliance with the notice requirement is a *jurisdictional prerequisite* to recovery under the statute.") (emphasis added). In that case, the notice defect was raised in a timely motion to dismiss under both Rules 12(b)(1) and 12(b)(6). The district court granted the motion, and the Sixth Circuit affirmed because Supreme Court precedent "clearly precludes us from implying a private right of action against the defendant under the CWA." *Id.* at 397. The court also discussed an alternate ground that failure to abide by the notice provision "deprives us of jurisdiction." *Ibid.* But that finding was not necessary to the holding in that case, and the court cited *Hallstrom* for that proposition, which does not support it.

The eighteen-year-old *Painesville dictum* has been called into question. More recently, the Sixth Circuit has warned that attacks on the merits should not be confounded with jurisdictional challenges, admonishing courts to be more exacting when addressing challenges that are phrased as an attack on jurisdiction. *Primax Recoveries, Inc. v. Gunter,* 433 F.3d 515, 518-19 (6th Cir. 2006) ("'Clarity would be facilitated . . . if courts and litigants used the label 'jurisdictional' not for claim-processing rules, but only for prescriptions delineating the classes of cases (subject-matter jurisdiction) and the persons (personal jurisdiction) falling within a court's adjudicatory authority.'" (quoting *Eberhart v. United States,* 546 U.S. 12, 16 (2005) (per curiam), and citing *Kontrick v. Ryan,* 540 U.S. 443, 453 (2004))). The embodiment of that admonishment most recently is found in

*United States v. Kwai Fun Wong*, 135 S. Ct. 1625 (2015), where the Supreme Court held that the time limits in the Federal Tort Claims Act (FTCA) are nonjurisdictional and subject to equitable tolling.

The *Kwai Fun Wong* Court explained that absent a clear statement from Congress, procedural rules are nonjurisdictional, and accordingly do not "deprive a court of authority to hear a case." *Id.* at 1632. "In recent years, we have repeatedly held that procedural rules, including time bars, cabin a court's power only if Congress has 'clearly stated' as much." *Ibid.* The Court reasoned that only a jurisdictional time bar would forbid equitable tolling. In concluding that the time bar at issue was not jurisdictional, the Court found that the provision "does not speak in jurisdictional terms or refer in any way to the jurisdiction of the district courts." *Id.* at 1633.

Similarly, section 300j-8(b) does not speak in jurisdictional terms and is housed in a provision separate from section 300j-8(a), which confers upon federal courts jurisdiction over these citizen suits. Section 300j-8(b) does not include any clear statement from Congress that would limit the Court's authority to hear this case. It simply prescribes a condition precedent to filing a suit, which, absent jurisdictional language, probably is subject to forfeiture. *Kwai Fun Wong* cuts against the Sixth Circuit's jurisdiction-based statements in *Painesville* and supports the proposition that notice requirements fall under the label of "quintessential claim-processing rules," which "seek to promote the orderly progress of litigation," speaking "only to a claim's timeliness, not to a court's power." *Id.* at 1632 (internal marks and citations omitted). *See also Boler v. Early*, 865 F.3d 391, 405 ("Plaintiffs bringing claims under the SDWA must also comply with certain *procedural requirements*, including providing a notice of intent to potential defendants 60 days prior to filing suit.") (emphasis added).

In asserting that the Court lacks jurisdiction, the City Council also relies on Judge O'Meara's opinion in *McMillian v. Snyder*, No. 16-10796, 2017 WL 492077 at *1-2 (E.D. Mich. Feb. 7, 2017), where the court, citing *Hallstrom*, granted the defendants' motion to dismiss in part based on the plaintiffs' failure to comply with section 300j-8(b)'s 60-day notice provision. Contrary to the City Council's position, *McMillian* actually supports the proposition that the notice provision is procedural — and accordingly subject to forfeiture — because the defendants there properly raised the issue in Rule 12(b)(6) motions to dismiss. *See* Briefs of Defendants, *McMillian v. Snyder*, No. 16-10796, 2017 WL 492077. Although Judge O'Meara styled the defendants' argument as the plaintiffs' failure to comply with "the statute's jurisdictional arguments," the basis for dismissal on most of the nine motions the defendants filed was a failure to state a claim, not a lack of subject matter jurisdiction.

The weight of authority favors the view that the 60-day notice requirement in section 300j-8(b) is a claim processing rule that imposes a procedural requirement. To be sure, it is a requirement that a district court may not disregard. *Hallstrom*, 493. U.S. at 31. But a defendant also must raise the issue on time, and failure to do so will result in a forfeiture. The intervening defendant did not raise the issue until after judgment was entered, despite the opportunity to do so earlier in the case. Because Congress has not made the SDWA's notice provision a condition of subject matter jurisdiction, it is not an issue that the City Council was free to raise "at any stage in the proceedings." *See Schultz*, 512 F.3d at 756. Waiting until now to raise the issue forfeits it. *United States v. Huntington Nat. Bank*, 574 F.3d 329, 331-32 (6th Cir. 2009) (stating that "absent a legitimate excuse, an argument raised for the first time in a motion for reconsideration at the district

court generally will be forfeited") (citing *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008).

Moreover, section 300j-8(b) only obligates "the plaintiff" to give "notice of such violation" "to the [EPA] Administrator," the "alleged violator," and "the State." The City Council argues that the September 2016 letter to Flint from the EPA does not satisfy that requirement because it did not come from the plaintiff. But according to the MDEQ, its own administrator also sent Flint a letter in September 2016 that echoed the EPA's concerns. That letter, coupled with the many expressions of concern about the potential failure "to make changes in operations" so that its "waterworks system [would be] operated as to . . . adequately protect the public health," Mich. Comp. Laws § 325.1015(1), (2), provides notice to the "alleged violator." Additional and separate notice to the EPA and the state certainly was not required, since those entities generated the notice to begin with.

The City Council's challenge to the Court's subject matter jurisdiction must fail.

### B. Projected Water Fund Insolvency

Based on the declaration of William Scott Kincaid, the City Council constructs a scenario in which the impending insolvency of Flint's water fund would not be inevitable. According to Mr. Kincaid, the root of the problem is the mistrust engendered among Flint's residents by the catastrophic failure of the water system under the guidance of the state-appointed emergency manager. He explains that before April 2014, the collection rate was 90%. But after the City switched its water source to the Flint River, drinking water quality plummeted and many residents quit using the water and paying their bills. In addition, Mr. Kincaid points out that the City unlawfully raised water rates, a position ultimately sustained by the Michigan Court of Appeals.

He says that if things are made right — that is, water rates are reduced and trust is restored — collection rates will rise and the insolvency of the water fund is not inevitable.

The City Council seems to think that Mr. Kincaid's speculation undermines the finding that the injury identified by the MDEQ is imminent. It does not, for several reasons. First, there is no evidence that a rise in collection rates, coupled with a restoration of water rates — which Mr. Kincaid would calculate as a reduction of about 36% — would cause a marked increase in water revenue. It might even result in a reduction in revenue. But it is hard to say, because the statements in the declaration are quite general and not focused on concrete financial analysis. Second, there is no evidence that accomplishing those goals could take place in the near future, or at any time before the water fund runs out of money. Third, the collection rates are not Flint's only problem. As outlined in the summary judgment opinion, Flint also is on the hook now for monthly bond payments to the Karegnondi Water Authority (KWA), and there is a need to spend for infrastructure improvement to ensure the safety of the water delivery system. An increase in the rate of collecting water bills that charge a third less for the service is, one might say, but a drop in the bucket.

The reasoning behind Mr. Kincaid's declaration also is cause for concern. The facts laid out by the MDEQ portend dire consequences for Flint residents if its government does not act — and soon — to address their long-term water needs. Mr. Kincaid proposes a solution that has no apparent basis in actual city finances. He asserts that he has been a member of the City Council for over thirty years and has been "directly involved in the finances of Flint." He does not profess any special knowledge or expertise in accounting or finance. And his analysis fails to focus on the several interrelated factors that impact the solvency of the Flint water fund. The Court does not deem it prudent to rely on that declaration to find "newly discovered evidence" (Rule 59(e)), or "a

substantive mistake of . . . fact" (Rule 60(b)(1)), or "exceptional and extraordinary circumstances" (Rule 60(b)(6)), or a "palpable defect" in its prior reasoning (LR 7.1(h)(3)).

## C. Factual Disputes

The City Council has cataloged a list of potential issues that it has characterized as "factual disputes," which, it believes, ought to prevent summary judgment. None of these were raised in response to the MDEQ's motion for summary judgment in briefing or oral argument. The City Council now argues that it "was not asked for, and did not provide, a stipulation or waiver concerning facts." But that argument intimates a fundamental misunderstanding of the summary judgment process.

Under Federal Rule of Civil Procedure 56, the party bringing the summary judgment motion has the initial burden of informing the court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Mt. Lebanon Pers. Care Home, Inc. v. Hoover Universal, Inc.*, 276 F.3d 845, 848 (6th Cir. 2002). The MDEQ did that in its motion. If the defendant or intervening defendant wanted to contend that facts are in dispute, they could not simply "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact"; instead they must make an affirmative showing with proper evidence to defeat the motion. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). That should have been done by designating specific facts in affidavits, depositions, or other factual material showing "evidence on which the jury could reasonably find for the [intervening defendant]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). If the non-moving party is unable to meet that burden, then summary judgment is clearly proper. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

The City Council never offered any factual material — or even raised an argument — that questioned the MDEQ's established assertions. Even now, the list of potential facts that might be in dispute is entirely undocumented.

But, City Council argues, there was not much time for discovery and the Court moved quickly through the procedures. Rule 56 has an answer for that: City Council could have attempted to "show[] by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition" to summary judgment. Fed. R. Civ. P. 56(d). No such affidavit or declaration was submitted. The City Council chose instead to base its opposition to MDEQ's summary judgment motion on legal arguments focusing mostly on justiciability issues. Relief, therefore, is foreclosed. *Unan v. Lyon*, 853 F.3d 279, 292 (6th Cir. 2017) ("We have observed that filing an affidavit that complies with Rule 56(d) is essential, and that in the absence of such a motion or affidavit, 'this court will not normally address whether there was adequate time for discovery.'") (quoting *Plott v. Gen. Motors Corp.*, 71 F.3d 1190, 1196 (6th Cir. 1995)).

The Seventh Circuit confronted a similar circumstance in *Publishers Resource, Inc. v. Walker-Davis Publications, Inc.*, 762 F.2d 557 (7th Cir. 1985). The defendant appealed the district court's summary judgment for the plaintiff and "raised several other arguments on appeal which it contends involve material issues of fact that make the entry of summary judgment improper." *Id.* at 561. After observing that "[n]one of these issues were raised in response to [the plaintiff's] summary judgment motion; they were only argued in support of [the defendant's] motion to reconsider," the court quoted this language from another district court opinion:

> Motions for reconsideration serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence. Such motions cannot in any case be employed as a vehicle to introduce new evidence that could have been adduced during pendency of the summary judgment motion. The non-movant has

> an affirmative duty to come forward to meet a properly supported motion for summary judgment. . . . Nor should a motion for reconsideration serve as the occasion to tender new legal theories for the first time.

*Ibid.* (quoting *Keene Corp. v. International Fidelity Ins. Co.*, 561 F. Supp. 656, 665-66 (N.D. Ill. 1982) (citations and footnote omitted) (emphasis added), *aff'd*, 736 F.2d 388 (7th Cir. 1984).

So it is here. The City Council's opposition to summary judgment comes too little, too late. There is no basis to grant relief on this ground under any of the rules the City Council cited.

### D. Need for Evidentiary Hearing before Permanent Injunction Issuance

Relying on *United States v. Owens*, 54 F.3d 271 (6th Cir. 1995), the City Council insists that the Court was obliged to hold an evidentiary hearing before issuing a permanent injunction. That argument ignores the idea that an evidentiary hearing is not necessary when the defendant fails to show that there are factual disputes and does not avoid summary judgment. Moreover, *Owens* does not support the City Council's argument.

In *Owens*, the district court issued a preliminary injunction after a hearing, but later converted it to a permanent injunction without notifying the parties or conducting a trial. 54 F.3d at 276. The defendant contested that move in a motion to amend the judgment, which the district court denied. On appeal, the court stated that "it is generally inappropriate for a federal court at the preliminary injunction stage to give a final judgment on the merits." *Ibid.* (quoting *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981)). That is because, "a preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits." *Ibid.* (quoting *Camenisch*, 451 U.S. at 395).

There was no motion for a preliminary injunction in this case. The MDEQ sought a judgment as a matter of law under Rule 56. The procedure criticized in *Owens* was different than that at work here. And, as the *Owens* court acknowledged, "when there is no dispute of material fact alleged, then it may be appropriate for a court to decide a case without an evidentiary hearing." *Id.* at 277 (citing *United States v. McGee*, 714 F.2d 607, 613 (6th Cir. 1983)).

### E. Injunction and State Laws

The City Council also argues to the extent the Court's judgment forces the City to approve a contract against its will, the judgment violates the Flint City Charter and state law contract principles. But as the Court noted in its order, it is within the power of the federal courts to order performance by a local government in excess of limits set by state statute. *Missouri v. Jenkins*, 495 U.S. 33, 57 (1990). As the court held in *Bylinski v. City of Allen Park*, 8 F. Supp. 2d 965, 970-71 (E.D. Mich. 1998), state law must yield when necessary to enforce federal law.

> Under *Jenkins*, when a federal court determines that a local municipality's actions violate a federal statute that is based on provisions of the United States Constitution (in this case defendant municipalities violated the Federal Clean Water Act, 33 U.S.C. §§ 1251 et seq., enacted by Congress empowered by provisions in the Constitution), the court may order a local government unit with taxing authority to levy taxes adequate to satisfy the municipality's debt obligations incurred in complying with federal law, even if the taxes exceed state constitutional and statutory limitations. In other words, *Jenkins* permits a federal court to enjoin operation of state statutes and constitutional provisions prohibiting a local government unit from levying taxes at a rate above limits set by state law without majority electorate approval.

*Ibid.*

In that case, the court was enforcing the Clean Water Act and found authority in the Constitution's general welfare clause as well as the Commerce Clause to do so. As the court aptly noted, "No more important single problem faces this country today than the problem of "good

water." Water is our greatest single natural resource." *Id.* at 971 (quoting H.R. Rep. No. 89-215, at 1 (1965), U.S. Code Cong. & Admin. News 1965, p. 3313).

Here, the plaintiff has demonstrated, and the Court has found, that Flint's need for a long-term agreement for a source of safe drinking water is dire. Ordering compliance with the SWDA does not disregard principles of equity or comity.

### F. Stay of Judgment

Lastly, the City Council asks the Court to stay its judgment, presumably to allow it to retain an expert to evaluate alternatives to the erstwhile deal that the Flint administration negotiated last April. City Council does not develop its argument, but it appears that the basis of this request is that it has shown that Flint is not at risk of losing access to the 72-inch pipeline owned by the Genesee County Drain Commission or its current source of drinking water.

There is no basis to conclude that the need for immediate action has diminished. In fact, as time slips away, Flint's opportunities for an economical long-term water supply contract are running out. As the Flint administration has outlined in its opposition to this motion, the City Council's inaction has resulted in losing a favorable contract with the Great Lakes Water Authority (GLWA) that would have provided credits — including retroactive credits — against the KWA bond debt, relieved Flint of that obligation, provided Flint with a long-term source of safe water at predictable rates, established a fund for those unable to pay their water bills, and freed cash for infrastructure repair and improvement. That deal is off the table, and it is unclear whether all or part of it can be revived.

The City Council's water consultant wants 75 days to complete his task. During that time, the window will close on the opportunity to refinance the KWA bond debt. Meanwhile, Flint will pay short-term (that is, premium) rates for its water and a hefty sum to KWA each month.

And the source of Flint's water during that period is not secure. The City Council voted to extend its current contract with GLWA for two more years, after it expires at the end of this month. That certainly is no long-term contract, and there is no evidence that the proposal was communicated to GLWA, or that GLWA would be disposed to accept it. One might wonder if GLWA, which is under an obligation to treat all of its municipal water customers with equal favor, could even accept such a proposal; or why, as the administration points out, GLWA would allow City Council to "string it along while it attempts to secure another water source."

The City Council has fallen far short of proposing "appropriate terms for the opposing party's security." Fed. R. Civ. P. 62(b). In fact, its actions (and inactions) since the judgment was entered — such as they are — likely has made Flint's situation worse. The administration suggests that the delay caused by the stay City Council seeks would be the last brick on the road to Flint's bankruptcy. The evidence indicates that its assessment may be accurate.

III.

The City of Flint's brief includes press accounts of City Council members decrying the Court's intervention, complaining about the "gun [held] to [their] head," "forced into signing a contract." The Court's judgment, however, ordered the City of Flint to do what its citizens elected their representatives to do: govern by acting in the interest of the common good. That has not happened over the past year, and now time — which is of the essence — is in short supply.

MDEQ and the City of Flint have asked the Court to authorize the mayor to sign the Master Agreement negotiated last spring. But that deal in no longer available, since the signature escrow agreement expired on September 30 this year due to the City Council's inaction. In all events, the City Council has not offered any good reasons for reconsidering, altering, amending, withdrawing, or staying this Court's judgment. The parties may move to enforce it as they see fit.

Accordingly, it is **ORDERED** that the intervening defendant's emergency motion for reconsideration, to alter or amend judgment, for relief from judgment, and for stay of proceedings [dkt. #40] is **DENIED**.

                                          s/David M. Lawson
                                          DAVID M. LAWSON
                                          United States District Judge

Dated: October 27, 2017

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on October 27, 2017.

                        s/Susan Pinkowski
                        SUSAN PINKOWSKI